Dear Ms. Mailhes:
Your request for an opinion has been forwarded to me for research and reply. Your letter states that you have been asked to advise the Calcasieu Parish Police Jury as to a request for a proposition election for the November 20, 1999 general election on the issue of slot machine gaming at Delta Downs. In addition to your letter, we received a copy of the August 20th and 23rd letters from Delta Downs' legal counsel which officially makes application to the jury for the call of the proposition election. You seek an opinion on the following question:
 October 5, 1999 is the deadline for calling an [proposition] election in November. Since the previous election was on October 18, 1997, the October 5th date, obviously, would mean the Jury would be accepting an `application' from Delta Downs, prior to the two (2) year period [in R.S. 27:381(F)] [i]t would appear the intent of these two (2) sections [R.S. 27:381(B) (F)] . . . [i]t would be that the local governing authority shall not call or accept an application until the two (2) year period, has past. Could you try to clarify this matter?
The Louisiana Legislature enacted R.S. 27:381 by way of Louisiana Acts 1997, No. 721, as follows:
 A. Notwithstanding any provision of law to the contrary, no slot machine gaming shall be allowed in an eligible facility in any parish unless the operation and conduct of slot machine gaming pursuant to this Chapter has first been approved at an election held for such purpose.
 B. Any person desiring to operate and conduct slot machine gaming at an eligible facility in a parish, shall make application to the governing authority of the parish in which the proposed slot machine gaming is to be conducted. The application shall state the location of the proposed slot machine gaming and describe the facilities proposed to be constructed for the holding of slot machine gaming and shall have attached the license, or a certified copy thereof, for the live horse race meeting issued by the Louisiana State Racing Commission to conduct such live horse racing at the eligible facility.
 C. Upon receipt of the application, the governing authority of the parish in which the slot machine gaming is proposed to be held shall call and conduct a referendum election within the parish for the purpose of submitting to the qualified electors of the parish the proposition whether or not the proposed slot machine gaming shall be allowed.
 D. Except as provided in this Section, the elections shall be held in compliance with the Election Code provisions governing proposition elections. In addition to the notice required by the Election Code, the parish governing authority also shall have five spot announcements, at least two days apart, of the election broadcast on radio or television channels readily receivable in the parish and shall make notice of the election available to the news media. All qualified electors of the parish shall be entitled to vote in the election.
 E. The proposition to be printed on the election ballot shall be: `TO AUTHORIZE SLOT MACHINE GAMING AT LIVE HORSE RACING FACILITIES. Shall the business of slot machine gaming at a live horse racing facility be conducted within the parish of ________' and the voters shall vote for or against the proposition, a vote for the proposition being a `Yes' vote and a vote against the proposition being a `No' vote. The election shall be conducted as provided in the Election Code. Any elector who was qualified to vote in the election may demand a recount of the ballots or contest the election in the manner and within the time provided by law for recount or contest of election under the general election laws of the state.
 F. The parish governing authority shall notify the applicant and the Gaming Control Board promptly of the results of the election. If slot machine gaming has been approved, the applicant may proceed in accordance with this Chapter and rules adopted pursuant to the authority of this Chapter. If the proposed slot machine gaming has not been approved at the election, the board shall not grant a license therefor and shall not accept or consider an application for such a license in the same parish until the expiration of at least two years from the date of the election at which the slot machine gaming in the parish was disapproved. (Emphasis added).
The act further provided, in Section 2, that no slot machine gaming could be conducted until and unless the legislature provided by law for the imposition, collection, and disposition of taxes on net slot machine proceeds and fees necessary to administer the requirements of the Act and the dedication of a fixed percentage of net slot machine proceeds to supplement purses for races and to the associations for use as awards for breeders. Louisiana Acts 1998, First Extraordinary Session, No. 142, purports to comply with Section 2 of Louisiana Acts 1997, No. 721.
 Two Year Issue
It is our opinion that R.S. 27:381(F) applies only to the Gaming Control Board, as it prohibits the board from accepting or considering an application for a license [on slot machine gaming] in the same parish until the expiration of at least two years from the date of the election at which the slot machine gaming in the parish was disapproved. We can not, therefore, conclude that the police jury is subject to this two (2) year prohibition; however, we question whether or not legislative approval is necessary before another proposition election can be held in this matter.
 Legislative Approval Issue
R.S. 18:1300.22 provides, in part, "Notwithstanding any other law to the contrary, . . . any election required by ArticleXII, Section 6(C) of the Constitution of Louisiana may be called only by an enactment of the legislature which specifically authorizes each such election." (Emphasis added). What is the legislative intent of this law? We question whether the law requires legislative approval for each type of election authorized by the constitution or whether it requires legislative approval for each and every actual election for those types of elections authorized by the constitution. LSA-C.C. art. 10
states, "When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law." Furthermore, art. 13 states, "Laws on the same subject matter must be interpreted in reference to each other." Therefore, we researched not only the purpose of R.S. 27:381 and 18:1300.22, but also whether or not these two laws were meant to reference each other.
Louisiana Acts 1997, No. 1235 enacted R.S. 18:1300.22, and its title provided, "[r]elative to gaming elections, to specify that certain referendum elections required by the constitution may be called only by law; to provide that certain such elections may be called by the parish governing authority; and to provide for related matters." The original bill provided, in part:
 A. Notwithstanding any other law to the contrary, except as otherwise permitted in Subsection B of this Section, any election required by Article XII, Section 6(C) of the Constitution of Louisiana may be called only by law.
The original bill was amended, and the engrossed bill provided:
 A. Notwithstanding any other law to the contrary, except as otherwise permitted in Subsection B of this Section, any election required by Article XII, Section 6(C) of the Constitution of Louisiana may be called only by an enactment of the legislature which specifically authorizes each such election.
After listening to the debates in the Senate Judiciary Committee, where the bill was heard and explained by Senator Dardenne, we are of the opinion that the purpose of paragraph (A) of the bill was to require a legislative act for a local option election on issues of gaming that are set forth in the constitution.
In the same legislative session in 1997, the legislature enacted R.S. 27:381 to authorize a new form of gaming, slot machine gaming in an eligible facility by local option election. It is our opinion that R.S. 27:381 is a specific legislative act for a local option election for a gaming issue set forth in the constitution, Art. 12, Sec. 6(C).
The final question is whether additional legislative approval is necessary for a second election in this matter? The answer to this question, in our opinion, is no. To opine otherwise, we would not be able to interpret R.S. 27:381 and R.S.18:1300.22 in reference to each other, nor would we be able to give meaning to the two (2) year language of R.S. 27:381(F). If it were the legislature's intent for R.S. 27:381 to only apply one time, it could have easily stated such in the law. It could have provided for an election on a certain date, such as the video poker legislation which provided for an election at the 1996 congressional general election. (R.S. 18:1300.21) Again, it would have been unnecessary for the two (2) year waiting period in paragraph (F) of R.S. 27:381, if the law no longer had any effect after one election was held pursuant to the statute. Further, the legislature has not seen fit to repeal R.S. 27:381, and we can not ignore the clear language of the law. LSA-C.C. art. 9. Additionally, our research leads us to believe that the local option election for slots at certain racetracks was intended to operate like the law on local option elections for alcoholic beverages, which provides for the governing authority to call the local option election upon certain requirements being met and which limits the frequency of the elections.
In sum, we are of the opinion that the police jury is bound by the language of R.S. 27:381 and is required to call and conduct a referendum election on the question of slot machine gaming upon proper application. We hope that this opinion addresses all of your concerns. If we can be of further assistance, please advise.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 ANGIE ROGERS LAPLACE
Assistant Attorney General
RPI/ARL:cwr
arl/opinions/1999/99-287